**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **07-CR-236 (RWR)** |
| **MARK PONDER** | : | |

**OBJECTION TO PRESENTENCE INVESTIGATION REPORT**
**AND MEMORANDUM IN AID OF SENTENCING**

On October 19, 2007, Mr. Mark Ponder, entered a plea of guilty to one count of bank robbery, in violation of 18 U.S.C. § 2113(a), and one count of robbery, in violation of 22 D.C. Code § 2801. He will appear before this Honorable Court for sentencing on January 7, 2008. Through undersigned counsel, Mr. Ponder respectfully submits the following objection to the Presentence Investigation Report (hereinafter "PSI") and information for the Court's consideration in determining an appropriate sentence.[1]

Factual Background

The offenses at issue here were the result of a suicide attempt. During the year prior to the instant offenses, Mr. Ponder had worked hard to move past the lingering effects of severe child abuse and decades of addiction to crack cocaine. He maintained his sobriety, secured a job and, for the first time, obtained a home of his own. Unfortunately, he could not overcome the rejection and abuse he received from his mother. In July of this year, when he visited her, expecting her to be proud of his new success, he was again met with rejection. As a result, he quickly fell into a suicidal depression that led to the instant offenses.

[1]Counsel also submitted to the Court, under separate cover, a letter from a psychologist who evaluated Mr. Ponder, Dr. Carole T. Giunta, Ph.D., and a letter from Mr. Ponder's friend, Jim Graham.

An understanding of Mr. Ponder's childhood is necessary to understand how his mother's rejection led to the instant offenses. Mr. Ponder's father was an alcoholic and died from cirrhosis of the liver when Mr. Ponder was approximately five years old. His mother, who apparently suffered from a mental illness, violently abused Mr. Ponder and his siblings, and Mr. Ponder still bears the scars from his mother's frequent beatings. In addition to physical abuse, his mother gave her children the medication prescribed to her, in an effort to quiet them. When he was four years old, following an incident that left him bleeding from his head, Mr. Ponder and his siblings were removed from his mother's home. They were held in Junior Village and then placed in foster care. Over the years, Mr. Ponder lived in numerous foster homes. Although some of the foster parents treated Mr. Ponder well, he suffered physical abuse while living in at least one of these homes. When he was nine, he was placed in a school for boys that was a very rough environment. At one point, he tried to return to his mother, but she refused to let him live with her, sending him back to foster care. This rejection has disturbed Mr. Ponder for many years, particularly given that he believed that his mother had accepted his brothers back into her home, while rejecting him. It is unclear whether either of his brothers were ever actually accepted by his mother, because his sister reports that his mother rejected and stopped visiting all of her children. Nonetheless, to this day, Mr. Ponder believes that just prior to the time that his weekend visits with his mother ended, his brothers returned to live with his mother, making her rejection of him all the more difficult.

As a result of his family history, Mr. Ponder lacked direction as a young man and began smoking marijuana frequently when he was 18 years old. A short time later, he was convicted of carrying a dangerous weapon, and when he was 19 years old, he was convicted of attempted

burglary following a domestic dispute. When he was 21 years old, Mr. Ponder started using cocaine and then crack cocaine. He quickly became addicted and smoked crack cocaine at every opportunity for the following 19 years. Between 1990 and 1993, he was convicted twice for drug related offenses – once for simple possession and once for possession with intent to distribute – and also convicted of a Bail Reform Act violation. Over the following ten years, he did not incur any new convictions, although his addiction continued to control him.

In 1996, Mr. Ponder obtained a job working at a furniture store. He did not work full time, but periodically worked to help refinish and move furniture. This worked helped him support his addiction, but he remained homeless. While working at this furniture store, Mr. Ponder met Jim Graham, one of the store's regular customers. As the letter submitted to the Court attests, Mr. Graham, who empathized with Mr. Ponder's struggles to overcome a very harsh childhood and a crack addiction, became Mr. Ponder's friend. In fact, Mr. Ponder describes Mr. Graham as his first true friend.

In 2003, Mr. Ponder was convicted of a simple assault related to a domestic dispute and a Bail Reform Act violation for failing to appear in court in relation to that offense. He was placed on probation. At that time, however, he was still using crack cocaine and soon violated his probation. He was then sentenced to two consecutive 180 day terms of incarceration. While incarcerated for these offenses, Mr. Ponder participated in the R-Sat residential treatment program at the D.C. Jail. He completed the six month program and, after his release in 2006, regularly attended NA/AA meetings. After 19 years of addiction, this was the first significant period of time during which Mr. Ponder was able to maintain his sobriety.

In the beginning of 2007, with the help of Mr. Graham, Mr. Ponder obtained an apartment in a complex for recovering addicts, managed by the Coalition for the Homeless. In April, 2007, again with the help of Mr.Graham, Mr. Ponder obtained a job as a custodian, with the Washington Metropolitan Area Transit Authority ("Metro"). As the letter from Metro that is attached to Mr. Graham's letter attests, Mr. Ponder was "a very good worker." Mr. Ponder was very proud of his new home, his new job and his sobriety, and he worked hard.

Tragically, in early July, 2007, Mr. Ponder made what turned out to be one of the worst decisions of his life – he decided to visit his mother, who had recently suffered a stroke. Despite the years of abuse and neglect, he desperately wanted to receive his mother's love and approval. He wanted her to know how well he was doing. Unfortunately, when he went to visit her, despite her age and her illness, she was as cruel as ever and not impressed with Mr. Ponder's success. The depth of Mr. Ponder's devastation can only be understood in the context of all that he had suffered from his mother. He was despondent. He missed work and lost his job, and then he became suicidal. Significantly, Mr. Ponder did not relapse, begin using drugs and then decide that he wanted to die. He decided that he wanted to die and determined that an overdose would be the least painful and most direct route.

On July 9, 2007, Mr. Ponder walked into the PNC Bank on Columbia Road, with the sole intent of getting enough money to buy enough drugs to overdose. He walked into the bank – *unarmed* – demanded money, took the $2,469 the teller gave him, and set out to kill himself with drugs. Mr. Ponder bought drugs, started using and did not stop until his arrest six days later. A comparison of his arrest photograph to the photographs from the bank robbery confirms this. See Attached Photos. When he walked into the bank, he was wearing the clean, pressed, shirt

that he wore to visit his mother. At the time of his arrest, he was still wearing the same shirt, and its appearance attests to the fact that he had not changed since the bank robbery six days earlier.

Mr. Ponder expected and hoped that the drugs would kill him, but instead they made him behave in a manner inconsistent with his nature. After binging for days in an effort to overdose, on July 15, 2007, he was paranoid and hearing voices. He thought people were trying to hurt him, and in an effort to get away, forced his way into a taxicab and attempted to drive off. Not knowing how to drive, he did not get far before crashing the car, first into a parked car and then into the police car. Although he recognizes now that, by putting them in fear, he caused harm to the bank teller and cab driver, throughout this episode, Mr. Ponder did not intend to harm anyone, except himself.

## Argument

I. OBJECTION TO PRESENTENCE INVESTIGATION REPORT.

As noted in the Addendum to the PSI, Mr. Ponder submits that paragraphs 92 and 93 of the PSI do not fully state the applicable Superior Court Guidelines for Count 2 of the information. The Probation Office and Mr. Ponder agree that the Superior Court Guidelines provide that a "short split" sentence is permissible. See The Superior Court of the District of Columbia Voluntary Sentencing Guidelines, Appendix A – Master Grid ("Dark shaded boxes – prison or short split permissible."). The PSI also should contain the definition of a short split sentence. The Superior Court Guidelines define "a Short-Split Sentence" as "[a] sentence where the court imposes a sentence within the applicable prison range, suspends execution of all but six months or less (but not all) of it, and places the defendant on a period of probation up to five years."

II. CONSIDERATION OF § 3553 FACTORS.

As set forth in the PSI, for Count 1 of the information (bank robbery), the applicable recommended sentencing range under the United States Sentencing Guidelines (hereinafter "Guidelines") is 46 to 57 months. Pursuant to the Superior Court Guidelines, the applicable recommended sentencing range for Count 2 of the information (robbery) is 18 to 60 months, allowing for a short split sentence, consisting of less than 180 days incarceration followed by a period of probation.[2]

However, neither the Superior Court Guidelines nor the federal Guidelines are mandatory. With regard to the federal Guidelines, the Court "may not presume that the Guidelines range is reasonable." Gall v. United States, __ U.S. __, 128 S.Ct. 586 , 596-97 (2007). The Guidelines are but one of an array of factors the Court must consider. Kimbrough v. United States, __ U.S. __, 128 S.Ct. 558, 564 (2007). The Court has the discretion to evaluate the sentencing factors in 18 U.S.C. § 3553(a), and determine that "a within Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." Id. As the Supreme Court recently reiterated:

> The statute, as modified by Booker, contains an overarching provision instructing district courts to "impose a

---

[2]As the Court may recall, the original plea agreement in this matter provided for a plea to two federal offenses, bank robbery and carjacking. However, because it became clear during the initial plea hearing that Mr. Ponder could not truthfully agree to a factual proffer sufficient to meet the elements of the federal offense of carjacking (because he did not intend to harm anyone), the government agreed to modify the plea agreement and permit Mr. Ponder to enter a plea of guilty to the charge of robbery, instead of carjacking. This change reduced the applicable Guidelines by two offense levels (from level 21 to level 19), but added the Superior Court Guidelines. In so doing, the government noted that it would not ask the Court to impose a total sentence greater than what would have been the applicable range under the original agreement (57 to 71 months).

> sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing, including "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a) (2000 ed. and Supp. V). The statute further provides that, in determining the appropriate sentence, the court should consider a number of factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the sentencing range established" by the Guidelines, "any pertinent policy statement" issued by the Sentencing Commission pursuant to its statutory authority, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Ibid*. In sum, while the statute still requires a court to give respectful consideration to the Guidelines, see *Gall v. United States*, [128 S.Ct. 586], *Booker* "permits the court to tailor the sentence in light of other statutory concerns as well," 543 U.S., at 245-46.

Kimbrough, 128 S.Ct. at 570.

Mr. Ponder recognizes that the offenses he committed were serious offenses. The circumstances of these offense demonstrate, however, that Mr. Ponder is not a violent criminal who must be incarcerated for a substantial period of time. The circumstances demonstrate that Mr. Ponder's actions stemmed from nothing more (or less) than a break down, leading to a suicide attempt. As described more fully above and by Dr. Giunta, after working hard to overcome years of abuse, and obtain a job and his own apartment, Mr. Ponder expected to finally receive some recognition from his mother. When she rejected him again, he snapped and decided that he wanted to die. He wanted to harm himself, but never intended to harm anyone else. Mr. Ponder went into the bank with the sole intent of getting enough money to buy enough drugs to overdose. He expected the drugs to kill him, but instead the drugs made him behave in a manner inconsistent with his nature – as noted above, Mr. Ponder has several prior convictions,

but he has never before been convicted of an offense such as robbery. After binging for days in an effort to overdose, on July 15, 2007, he was paranoid and hearing voices. He thought people were trying to hurt him, and in an effort to get away, forced his way into a taxicab and attempted to drive off. Not knowing how to drive, he did not get far before crashing the car, first into a parked car and then into the police car. Although he recognizes now that, by putting them in fear, he caused harm to the bank teller and cab driver, throughout this episode, Mr. Ponder did not intend to harm anyone, except himself. After his arrest at the scene of the robbery, Mr. Ponder voluntarily told the police of his involvement in the unrelated bank robbery. Without this confession, the police would not have connected Mr. Ponder to the bank robbery.

Mr. Ponder does not contend that these factors support a formal departure under § 5K2.16 of the Guidelines for voluntary disclosure of the offense.[3] Compare United States v. Aerts, 121 F.3d 277, 280-81 (7th Cir. 1997) (disclosure of role in known bank robbery not sufficient for departure under § 5K2.16) with United States v. Jones, 158 F.3d 492 (10th Cir. 1998) (inevitable discovery of offense does not preclude departure where defendant voluntarily discloses involvement) and United States v. Rivera, 262 F.Supp.2d 313 (S.D.N.Y. 2003) (departure warranted for voluntary disclosure of involvement in bank robbery). However, when considering the circumstances of the offense under § 3553(e), the Court should consider that Mr. Ponder voluntarily admitted to the bank robbery at a time when he was not under investigation for that offense and, without this admission, he would not have been connected to the bank robbery.

[3]As the plea agreement states, the parties agree that no departure is warranted and that neither party will seek a departure. However, the agreement permits Mr. Ponder to seek a sentence outside the applicable Guideline range based upon the § 3553 factors.

Similarly, Mr. Ponder does not assert that his mental state at the time of the offenses rises to the level of a diminished capacity, warranting a formal departure under the Guidelines. See § 5K2.13 (departure may be warranted if significantly reduced mental capacity at time of offense contributed substantially to commission of offense). Nonetheless, his mental health is a factor the Court should consider when evaluating his history and characteristics under § 3553.

Mr. Ponder's depression was the result of the emotional issues that have arisen from the his mother's abuse and neglect. His severe depression and desire to commit suicide led to the charged offenses, and mental health treatment (which he did not receive prior to the offenses) would alleviate these problems. These factors: "(1) reduce[] the need for deterrence; (2) [make] incapacitation by imprisonment less appropriate; and (3) render[] him less deserving of punishment." See United States v. Miranda, 505 F.3d 785, 792-93 (7th Cir. 2007) (remanding for district court to consider these factors). A lengthy sentence here would not have a general deterrent effect on persons within the same category of offenders as Mr. Ponder – i.e., other despondent, suicidal individuals are not less likely to commit an offense for fear of a heavy sentence. Id. at 793. As the Seventh Circuit recognized in Miranda, where a defendant has a treatable mental illness, the sentencing goal of incapacitation may more appropriately be advanced by mental health treatment than by a lengthy sentence. Id. at 793. Mr. Ponder's emotional problems are treatable and such treatment would assure that Mr. Ponder will not commit any other offense. Moreover, "a person who would not have committed a crime but for his mental illness would be less deserving of punishment because he is 'not as evil, as worthy therefore of punishment, as one who would not be law abiding even if he were not mentally impaired.'" Id. at 793-94 (quotation omitted). Although the defendant in Miranda had a mental

illness, rather than an emotional problem such as Mr. Ponder had, these arguments are equally applicable here because absent his emotion problems Mr. Ponder would not have committed the offenses and would still be a law-abiding citizen working at Metro.

     Finally, when considering sentencing options, we ask that the Court consider that Mr. Ponder has a unique and perhaps limited opportunity to put his life back together. After leading a very difficult life for many years, Mr. Ponder has been fortunate to meet a friend who has the ability and will to help him. Because of their long-time friendship, Mr. Graham has a unique insight into Mr. Ponder's character and confirms that Mr. Ponder is "a good person" who, as Dr. Giunta's letter describes, could do very well in the community with mental health counseling to help him "grieve the loss of the relationship he has wanted and needed with his mother." As of this time, the managers of the apartment complex where Mr. Ponder was living can make an apartment available for Mr. Ponder upon his release, although they cannot hold an apartment for him indefinitely. In addition, as the letter attached to Mr. Graham's letter states, Mr. Ponder is eligible to be re-hired by Metro and his supervisors there would welcome him back, if the employment division accepts his application. Mr. Ponder is confident that he could get his apartment and job back, and, with counseling, he can again become the productive citizen he was just prior to his visit with his mother and the instant offenses.

Conclusion

For the foregoing reasons and such other reasons as may be presented at the sentencing hearing in this matter, Mr. Ponder respectfully requests that the Court impose a sentence below the range recommended by Guidelines.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
______________________________
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500 ext. 109

PNC Northwest Branch
Teller 2
07/09/2007 12:28:00.91

